IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ELBERT L. CAIN,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| V. ) | Civil No. **06-250-GPM** |
| ) | |
| **MICHAEL J. ASTRUE[1],** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | |

### REPORT AND RECOMMENDATION

**PROUD, Magistrate Judge:**

    This Report and Recommendation Regarding plaintiff Elbert L. Cain's appeal of the denial of his application for Disability Insurance Benefits and Supplemental Security Income **(Doc. 1)** is respectfully submitted to Chief Judge G. Patrick Murphy, pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C).

    By written opinion dated December 8, 2005, Administrative Law Judge ("ALJ") Scott T. Miller concluded that plaintiff Cain was not disabled and, despite borderline intellectual functioning that constituted a "severe" mental impairment, he was capable of making the adjustment to work, albeit with restrictions. The Appeals Council of the Social Security Administration denied plaintiff's request for review, making ALJ Miller's decision the final decision of the Agency. Pursuant to 42 U.S.C. § 405(g), plaintiff now seeks review of the administrative decision denying him Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. §

---

[1]On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d)(1) and the last sentence of 42 U.S.C. § 405(g), Michael J. Astrue is, therefore, automatically substituted as the Defendant in this civil action, and no further action is necessary to continue this case.

423, and Supplemental Security Income (SSI) pursuant to 42 U.S.C. § 1382. **(Doc. 1).** The administrative record and the parties' briefs are before the Court. **(Docs. 9, 16 and 17).**

### Issues Presented

Plaintiff argues that:

1. The ALJ erred in not recognizing medical reports that supported the plaintiff's mental allegations and testimony; and

2. The ALJ did not recognize that the plaintiff was participating in a sheltered work environment.

**(Doc. 16).**

The defendant Commissioner generally counters that sufficient evidence in the record supports the ALJ's decision, and that the ALJ properly addressed all medical evidence and the fact that plaintiff was working in a sheltered work environment. **(Doc. 17).**

### Applicable Legal Standards

To qualify for DIB or SSI, a claimant must be "disabled." "Disabled" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).** A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. **42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C).**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. In essence, it must be determined (1) whether the claimant is presently employed; (2) whether the claimant has an impairment or combination of impairments that is severe; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5)

whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience.  **Schroeter v. Sullivan, 977 F.2d 391, 393 (7th Cir. 1992); 20 C.F.R. §§ 416.920(b-f) and 404.1520(b-f).**

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." **42 U.S.C. § 405(g).**  Thus, the Court must determine not whether plaintiff was, in fact, disabled, but whether ALJ Miller's findings were supported by substantial evidence; and, of course, whether any errors of law were made.  **See Books v. Chater, 91 F.3d 972, 977-978 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir.1995)).**  The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  **Richardson v. Perales, 402 U.S. 389, 401 (1971).**

In reviewing for "substantial evidence" the entire administrative record is taken into consideration, but this Court *does not* reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.  **Brewer v. Chater, 103 F.3d 1384, 1390 (7th Cir. 1997).**  Furthermore, an ALJ may not disregard evidence when there is no contradictory evidence.  **Sample v. Shalala, 999 F.2d 1138, 1143 (7th Cir. 1993).**

In a situation such as the one at bar, where the claimant has only mental impairment, the residual functional capacity assessment is a more detailed inquiry.  In accordance with Social Security Ruling ("SSR") 85-16, mental impairments must be considered in "a detailed assessment of the individual's capacity to perform and sustain mental activities which are critical to work performance." Social Security Ruling 85-16 references 20 C.F.R. §§ 404.1545(c), 416.945(c) and lists several factors that must be considered such as psychological evaluations, the ability to sustain activities, interests, and relate to others, and the ability to function in a work-like situation.  Furthermore, Social Security Ruling 96-9p acknowledges that mental abilities are required for competitive, remunerative unskilled work and that a less than

3

substantial loss of ability to perform any of the basic work activities may significantly erode the unskilled occupational base. **SSR 96-9p.** A claimant's condition may make performance of even an unskilled job as difficult as an objectively more demanding job. **SSR 85-15.**

### Procedural History

Plaintiff Elbert L. Cain applied for Supplemental Security Administration (SSI) and Disability Insurance Benefits (DIB) alleging the onset of disability as of October 1, 2003. **(Doc. 9 ("R") pp. 53-55 and 196-202)**. Plaintiff had previously received SSI benefits as a child, from July 1, 1992, until December 31, 2001, due to borderline mental functioning, but upon reevaluation as an adult benefits were terminated. **(R. 24-31).** In a decision dated August 25, 2003, the ALJ Anne C. Pritchett found:

> The claimant has no exertional limitations. He would require simple repetitive tasks in a low stress environment without stringent speed or production requirements; who could meet the basic demands of unskilled work; who would require close supervision for the first 30 days of employment; who would require a stable work setting without frequent shifts in expectations of employee; and where reading and math were not required in the performance of the job.

**(R. 30).**

An appeal of that decision terminating benefits was not pursued; instead, plaintiff applied for benefits anew, again claiming disability due to borderline intellectual functioning. He does not allege any physical limitations.

### Synopsis of Relevant Evidence

Plaintiff was 22 years old at the time of ALJ Miller's decision. **(R. 216).** He lives with his mother and pays money toward utilities and food. **(R. 217 and 223).** Most recently plaintiff testified that he does not perform any household chores or shopping, but a November 2003 Activities of Daily Living Questionnaire indicates plaintiff cleans house and does laundry and yard work. **(R. 83-84 and 226).** Plaintiff does not have a driver's license. **(R. 85).** He

graduated from a high school special education program, but he cannot read beyond a first grade level, write or do math.  **(R. 85 and 218-219).**

A May 2001 evaluation by William D. Stevens, Ph.D.– when plaintiff was 17 years old– reports a full scale IQ of 58.  **(R. 123).**  Dr. Stevens opined that a work try-out/adjustment program in a sheltered workshop was indicated.  **(R. 124).**

A September 2002 evaluation by Jefferson County Comprehensive Services, Inc., based on multiple regression formulas and test scores, indicates plaintiff was suited for the "High Extended Work Training/Advanced Pre[-]vocational" level program.  **(R. 130).**  According to that evaluation:

> Many work placement options with job coaching are possible at this level, with total 'fade out' possibly occurring in the future.  Some job modifications and/or environment manipulations may be necessary to ensure the success of the client.  The high motor skills that Elbert possesses, in conjunction with his moderate integration-copings [sic] skills, and emotional stability, suggest that Elbert would be a good candidate for supported employment.

**(R. 131).**  Plaintiff has worked as a dishwasher at a Holiday Inn since September 2002.  **(R. 67, 75, 219 and 221).**   His job is "sheltered," in that he is actually supervised/coached and paid by Jefferson County Comprehensive Services, Inc.  **(R. 193 and 230).**

In December 2003, when plaintiff was 20 years old, Dr. Harry J. Deppe, Ph.D., performed a consultative psychological examination and reported a full scale IQ of 77.  **(R. 125-128).**  Dr. Deppe noted that plaintiff's test results reflected a lack of effort.  *Id.*  The doctor further opined that such "borderline functioning" meant that plaintiff was likely to experience difficulties performing complicated job duties.  **(R. 127).**  Plaintiff was otherwise considered to have adequate ability to relate to others, including coworkers and supervisors, and to withstand the stress and pressure of work.  *Id.*

A January 2004 consultative exam and residual functional capacity assessment (utilizing the required psychiatric review technique) by Dr. Donald Hensen, Ph.D., found moderate

limitation of plaintiff's ability to understand, remember and carry out detailed instructions.  **(R. 104).**  No other significant limitations were noted.  Again, plaintiff's intellectual functioning was characterized as borderline, but his functional, attentional and cognitive abilities were deemed adequate for performing simple, routine activities.  **(R. 106).**

Brenda Wilkins, a Qualified Mental Retardation Professional, and the Employment Program Manager for Jefferson County Comprehensive Service, Inc., wrote in August 2005 in support of plaintiff's application for benefits.  **(R. 193).**  Based on the full scale IQ score of 58 and, apparently, her own observations, Ms. Wilkins reported that plaintiff had marked difficulty understanding, remembering and carrying out instructions; and he requires extensive full-time job coaching to maintain his job.  *Id.*  According to Ms. Wilkins, plaintiff's ability to respond to supervision is strongly affected; he is verbally abusive, uses vulgar language and gestures, and he argues and complains on a daily basis.  *Id.*

The record also contains a medical source statement from Dr. Amorado, dated August 22, 2005, indicating plaintiff had marked restrictions of all work-related mental activities, and extreme restrictions relative to work-related interaction.  **(R. 194-195).**  There is no indication of what Dr. Amorado relied upon.

During the August 2, 2005, evidentiary hearing, plaintiff asserted that he had not worked since 2003, although his attorney corrected him.  **(R. 215-216).**  When he is not working, plaintiff primarily plays video games and basketball.  **(R. 228).**  Plaintiff thought he could remember an oral shopping list and go to the store and get everything on the list.  **(R. 232).**  Upon questioning by his attorney, plaintiff opined that if he left his home he would probably get in a fight– he lives in a rough neighborhood.  **(R. 232-233).**

During the August 2005 evidentiary hearing, vocational expert Dr. Darrell Taylor characterized plaintiff's work as a dishwasher as medium, unskilled work.  **(R. 233).**  Based on his age and education, plaintiff could still perform such work and other similar jobs, such as

unskilled janitorial cleaning. **(R. 234).**

A hypothetical was posed regarding an individual who has a full scale IQ of 77. Dr. Taylor opined that, from a vocational perspective, such a person could handle simple instructions and otherwise be able to work. **(R. 235).** In contrast, a person with a full scale IQ of 58 would be precluded from handling even simple instructions. **(R. 235).**

### ALJ Miller's Decision

ALJ Miller used the August 2003 decision denying plaintiff benefits as a reference point. **(R. 13).** He concluded that plaintiff's borderline intellectual functioning was "severe" for purposes of 20 CFR §§ 404.1520(c) and 416.920(c), but did not equal one of the presumptively disabling listed impairments in Appendix 1, Subpart P, Regulation No. 4. **(R. 13).** It was noted that historically there was a full scale IQ score of 58, but there was nothing to indicate that was a valid score. **(R. 13).** Similarly, plaintiff's subsequent full scale IQ score of 77 was deemed invalid due to lack of effort. **(R. 13).** Therefore, there was no valid score for purposes of evaluating whether plaintiff met listing 12.05, relative to presumptively disabling mental retardation.

The ALJ found plaintiff did not otherwise meet the criteria for Listing 12.05. Plaintiff's testimony was characterized as only fair, and not fully credible. **(R. 15 and 18).** The ALJ concluded that, by plaintiff's own account, he only had a moderate degree of difficulty performing activities of daily living. **(R. 14).** Some degree of difficulty interacting with others was acknowledged, but the ALJ concluded plaintiff remained capable of functioning to the extent that he graduated from high school and had worked for three years in a sheltered work environment. **(R. 14).** Although plaintiff was found to have a moderate degree of difficulty maintaining concentration, persistence and pace, the ALJ noted plaintiff remained capable of playing video games and basketball, paying bills and shopping. **(R. 14).** No episodes of decompensation were suggested. **(R. 14).**

ALJ Miller found that plaintiff had the residual functional capacity for only simple, repetitive tasks in a low stress environment, with no stringent speed or production requirements, and no reading or arithmetic computations.  A stable work setting was required, where expectations will not frequently change.  Close supervision for the first 30 days of employment was also needed.  **(R. 16).**  In determining plaintiff's residual functional capacity, the ALJ noted that plaintiff had no physical limitations, he did not describe any aggravating factors or symptoms, and he was not undergoing treatment or on medication.  **(R. 15).**  In reaching that conclusion, ALJ Miller noted that an agency psychologist concluded plaintiff's ability to perform daily activities was only moderately limited by his condition, and plaintiff had mild difficulty maintaining concentration, persistence or pace.  **(R. 16).**  ALJ Miller elected not to give Brenda Wilkins' August 2005 assessment controlling weight.  Wilkins had characterized plaintiff as having marked difficulty understanding, remembering and carrying out instructions, extreme difficulty responding appropriately to supervision, and being unable to understand and follow rules.  **(R. 15).**

ALJ Miller recognized that plaintiff's three years as a dishwasher did not qualify as substantial gainful employment because it was a sheltered work environment run through Jefferson County Comprehensive Services, Inc.  **(R. 14;** *see* **20 C.F.R. § 404.1574).**

The Medical Vocational Guidelines do not dictate a finding of disabled or not disabled in a situation such as this, where the impairment is non-exertional. **20 C.F.R., Pt. 404, Subpt. P, App. 2, § 200.00(e).**  However, the ALJ noted that plaintiff was 22 years old, had a high school/special education degree, and no transferable skills.  **(R. 17).**  Plaintiff was deemed significantly compromised at all exertional levels by non-exertional limitations.  **(R. 17).**  Resting on the vocational expert's testimony that plaintiff could make an adjustment to work such as a janitor or cleaner at the light exertional level, plaintiff was found not disabled.  **(R. 17).**

**Analysis**

This Court construes plaintiff's arguments as relating solely to plaintiff's residual functional capacity and ability to perform any work within the economy.

Although plaintiff has no exertional limitations, for reference:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

**20 C.F.R. §§ 404.1567(b) and 416.967(b).**  Given this definition and plaintiff's residual functional capacity, he is easily capable of performing the exertional requirements of either light or sedentary work.

Plaintiff asserts that it was error to discount Ms. Wilkins' assessment of plaintiff, as she is a Qualified Mental Retardation Professional, and the Employment Program Manager for Jefferson County Comprehensive Service, Inc., which supervises plaintiff at his job as a dishwasher.  The thrust of plaintiff's argument is that Wilkins' evaluation is based on plaintiff's actual behavior and demonstrated abilities.  Plaintiff contends the ALJ was, in essence, "playing doctor" and substituting his own opinions for those of an expert, Ms. Wilkins.  Plaintiff further argues that the ALJ failed to recognize that plaintiff was working in a sheltered work environment, which is not "competitive, remunerative work."  *See* **SSR 85-15.**  Plaintiff also stresses that, despite the early projection that the need for supervision and/or coaching would fade out, plaintiff has been supervised for three years.

According to SSR 85-15:

> Where a person's only impairment is mental, is not of listing severity, but does prevent the person from meeting the mental demands of past relevant work and prevents the transferability of acquired work skills, the final consideration is whether the person can be expected to perform unskilled work. *The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base*. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.
>
>> Example 1: A person whose vocational factors of age, education, and work experience would ordinarily be considered favorable (i.e., very young age, university education, and highly skilled work experience) would have a severely limited occupational base if he or she has a mental impairment which causes a substantial loss of ability to respond appropriately to supervision, coworkers, and usual work situations. A finding of disability would be appropriate.
>
> Where there is no exertional impairment, unskilled jobs at all levels of exertion constitute the potential occupational base for persons who can meet the mental demands of unskilled work. These jobs ordinarily involve dealing primarily with objects, rather than with data or people, and they generally provide substantial vocational opportunity for persons with solely mental impairments who retain the capacity to meet the intellectual and emotional demands of such jobs on a sustained basis. However, persons with this large job base may be found disabled because of adversities in age, education, and work experience.

**SSR 85-15.**

As a preliminary matter, there is no debate that Ms. Wilkins is not a medical source for purposes of 20 C.F.R. §§ 404.1513(a)416.913(a). Moreover, her opinion that plaintiff had marked impairment that strongly affected him was based at least in part on an unverified IQ test reflecting a full scale score of 58. **(R. 193;** *see also* **R. 123).** As the ALJ noted, more recent verified testing showed a full scale IQ score of 77. **(R. 125-128).** Such "borderline functioning" meant that plaintiff was likely to experience difficulties performing complicated job

10

duties.  **(R. 127).**  Plaintiff was otherwise considered to have adequate ability to relate to others, including coworkers and supervisors, and to withstand the stress and pressure of work.  *Id.*  In addition, Dr. Donald Hensen, Ph.D., found only moderate limitation of plaintiff's ability to understand, remember and carry out detailed instructions.  **(R. 104).**

Insofar as Ms. Wilkins' opinion is based on plaintiff's actual performance and behavior in the sheltered work environment, there is no documentation to substantiate the dramatically different evaluation offered by Wilkins, compared to Jefferson County Comprehensive Services' initial evaluation– particularly since plaintiff had worked there for three years.  While Ms. Wilkins described plaintiff as having marked difficulty understanding, remembering and carrying out instructions, by plaintiff's own account he could remember an oral shopping list and go to the store and get everything on the list.  **(R. 232).**  In addition, a November 2003 Activities of Daily Living Questionnaire indicates plaintiff cleans house and does laundry and yard work.  **(R. 83-84 and 226).**  Thus, there is ample evidence supporting the ALJ's residual functional capacity assessment, and good reason for discounting the evidence cited by plaintiff.

ALJ Miller specifically noted that plaintiff's work was in a sheltered work environment.  **(R. 14).**  Therefore, plaintiff's assertion that the ALJ did not recognize that is specious.  Again, there is no support for Ms. Wilkins' dour assessment.  Thus, there is nothing to call into question the vocational expert's opinion that plaintiff could perform unskilled janitorial cleaning jobs.  The ALJ allowed for a period of supervision, consistent with the  Jefferson County Comprehensive Services' initial evaluation.  There is simply no evidence of a "*substantial* loss of ability to meet any of these basic work-related activities that would severely limit the potential occupational base."

Although plaintiff may disagree with the ALJ's residual functional capacity assessment, such determinations are reserved exclusively to the Commissioner (20 C.F.R. § 404.1527(e)), and there is substantial evidence to support the specific determination made by the ALJ in this case.

## Recommendation

For the aforestated reasons, it is the recommendation of this Court that the Agency decision denying plaintiff Elbert L. Cain Disability Insurance Benefits and Supplemental Security Income should be affirmed in all respects, and final judgment should be entered accordingly.

**DATED: July 19, 2007**

> **s/ Clifford J. Proud**
> **CLIFFORD J. PROUD**
> **U. S. MAGISTRATE JUDGE**

## Notice of Response Deadline

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 6(e), the parties shall file any objections to this report and recommendation on or before **August 5, 2007**.